Anne C. LACEK, Appellant,

v.

**WASHINGTON HOSPITAL CENTER CORPORATION, Appellee.**

No. 07–CV–1269.

District of Columbia Court of Appeals.

Argued Feb. 10, 2009.

Decided Aug. 27, 2009.

Charles Frederick Chester, Rockville, MD, for appellant.

Craig S. Brodsky, Baltimore, MD, with whom Donald L. DeVries, Jr. was on the brief, for appellee.

Before RUIZ, THOMPSON and OBERLY, Associate Judges.

THOMPSON, Associate Judge:

Appellant Anne C. Lacek filed a complaint in the Superior Court against Washington Hospital Center ("the Hospital"), alleging that, while a patient at the Hospital from June 21 to July 19, 2004, she sustained injuries as a result of the Hospi-

tal's negligence.[1] On October 26, 2007, the Superior Court granted the Hospital's motion to dismiss the complaint for lack of subject matter jurisdiction, finding that Lacek filed suit without first having given the Hospital the 90–day notice required by the Medical Malpractice Amendment Act of 2006 ("the Act"). We affirm the trial court's order.

## I.

The Act, set forth in D.C.Code § 16–2801 *et seq.* (2008 Supp.), requires "[a]ny person who intends to file an action in the [Superior Court] alleging medical malpractice against a healthcare provider" to "notify the intended defendant of his or her action not less than 90 days prior to filing the action." *Id.* § 16–2802(a). It further provides that "[i]f the notice required under § 16–2802 is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the date of the service of the notice." *Id.* § 16–2803. "A legal action alleging medical malpractice shall not be commenced in the court unless the [90–day notice] requirement[ ] ha[s] been satisfied." *Id.* § 16–2802(c). However, notwithstanding that general prohibition, "[u]pon a showing of a good faith effort to give the required notice, the court may excuse the failure to give notice within the time prescribed." *Id.* In addition, "[n]othing ... shall prevent the court from waiving the requirements of § 16–2802 upon a showing of good faith effort to comply or if the interests of justice dictate." *Id.* § 16–2804(b).

The parties agree that the Act became effective on March 14, 2007.[2] Lacek filed her complaint against the Hospital on June 25, 2007. On June 29, 2007, she faxed a copy of the complaint to a Hospital representative, stating on the facsimile cover sheet that "enclosed" was a "courtesy copy of suit, now filed, not served. Let me know how much time you need." By letter dated July 11, 2007, the Hospital's claims manager "acknowledge[d] receipt of what seems to be your 90 day notice of intent to sue." The letter stated that the Hospital was "conducting an investigation and will advise you of our position as soon as it is completed." On August 20, 2007, Lacek served the complaint on the Hospital. On September 10, 2007, the Hospital moved to dismiss the complaint, citing, *inter alia,* Lacek's failure to comply with the Act by giving notice to the Hospital at least 90 days prior to filing her complaint.

In opposing the motion to dismiss on September 24, 2007, Lacek argued that "it was agreed that the Defendants' position on liability would be forthcoming before a need to serve the suit within sixty (60) days" and that "dismissal and the inevitably prompt refiling of suit seems [sic] a waste of time for both the parties and the court." The court granted the Hospital's motion, however, finding that the requirements of the Act "clearly were not satisfied" since Lacek did not give the Hospital notice until four days after filing her suit (rather than 90 days before filing suit, as the Act requires). The court found that "[t]o the extent that [Lacek] seems to suggest that she made a good faith effort to give the required notice, ... the post-filing notice she gave was not the 90–day prefiling notice mandated by the statute." Rather, the court found, the June 29 post-

---

1. Specifically, Lacek alleged that she fell from her hospital bed after nursing staff "left a bed rail down" on July 7, 2004, and that she broke her hip because the Hospital failed to maintain certain fall precautions.

2. *See* D.C. Law 16–623, 54 D.C.Reg. 807 (2007).

filing notice "seems ... to have been the traditional courtesy notice given by one lawyer to another, when a complaint has just been filed or is about to be filed." Lacek timely appealed to this court on November 19, 2007.[3]

## II.

■ Lacek's first argument on appeal is that the 90–day–prior–notice requirement "did not apply to her claim, which clearly predated the effective date of March 14, 2007." Citing authorities for the principle that a new legislative enactment must operate only prospectively unless the legislature clearly indicated its intent that the enactment have retroactive effect, Lacek contends that the "clear legislative intent [of the Act] is to affect causes of action that might expire some three (3) years after the effective date of the new notice requirement." Otherwise, Lacek urges, (1) there is no "grace period," and (2) Lacek and similarly situated plaintiffs were placed in a position where they "could only file suit on [the] exact ninetieth (90th) day" after giving notice, a result which, Lacek asserts, is "certainly ... bizarre and unintended."

We are not persuaded by Lacek's arguments. To begin, although neither the text of the Act nor its legislative history specifies that the Council of the District of Columbia intended the 90–day notice requirement to apply to causes of actions that accrued prior to the Act's effective date, section 16–2803 clearly reflects the legislature's intent not to impair the rights of potential plaintiffs whose contemplated lawsuits were governed by limitations periods that would expire before a 90–day pre-filing notice could be given. Plaintiffs such as Lacek whose causes of actions accrued prior to passage of the Act are among the persons who stood most obviously to benefit from the "Extension of statute of limitations" effected by D.C.Code § 16–2803.

■ Further, although there is a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), new legislation is truly retroactive only if it "changes the legal consequences of acts completed before its effective date." *Id.*, 511 U.S. at 269 n. 23, 114 S.Ct. 1483 (citation and internal quotation marks omitted). Thus, there is a presumption that legislation that affects substantive rights will operate only prospectively. *Id.* By contrast, "laws which provide for changes in procedure may properly be applied to conduct which predated their enactment." *Duvall v. United States*, 676 A.2d 448, 450 (D.C.1996); *see*

---

**3.** On the same day, Lacek filed in the Superior Court a "Motion for Relief from Order of Dismissal," arguing that there had been "satisfaction of the Notice provision under D.C.Code § 16–2802(a) by waiver or agreement of the parties." She also cited her uncertainty about whether the "burdens as well as 90 day extension benefits" of the Act applied to causes of action that arose "many years prior to the enactment of the law." In addition, she complained of the court's failure to hold a hearing on the motion to dismiss and failure to "find good faith to excuse, or find effective compliance with" D.C.Code § 16–2802(a) "in light of the aforementioned waiver and/or inapplicability of the statute to

a preexisting cause of action." On December 21, 2007, the Superior Court denied the motion for relief on the ground that Lacek's filing of her notice of appeal to this court deprived the Superior Court of jurisdiction, a ruling that Lacek does not specifically challenge. *See Smith v. Pollin*, 194 F.2d 349, 350, (D.C.Cir.1952) (because "[j]urisdiction of the case is in the [court of appeals] while the appeal is pending, ... the proper procedure is for [appellant] to file [her] motion in the [trial court]. If that court indicates that it will grant the motion, the appellant should then make a motion in this court for a remand of the case in order that the [trial court] may grant the motion.").

*also Landgraf*, 511 U.S. at 285 n. 37, 114 S.Ct. 1483 (citing the principle that a new remedial statute, like a new procedural one, should presumptively apply to pending cases); *Edwards v. Lateef*, 558 A.2d 1144, 1147 (D.C.1989) (citing with approval cases from other jurisdictions holding that statutes that relate to remedies or to the modes of procedure apply retrospectively unless a vested right is destroyed); *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 879 (D.C.Cir.1993) (explaining that "[w]here a statute deals only with procedure, prima facie it applies to all actions-to those which have accrued or are pending, and to future actions," and holding that a December 1990 amendment to the federal statute governing venue applied to a pending suit filed in April 1990) (quoting NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 41.04, at 349 (4th ed.1986)); 82 C.J.S. STATUTES § 421 (1953) ("As a general rule statutes relating to remedies and procedure are given retrospective construction.").

The legislative history of the Act leaves little doubt that the 90–day pre-filing notice requirement was intended as remedial, procedural legislation, to "improve the legal process in the area of civil justice" by "encourag[ing] early settlements and facilitat[ing] the parties' ability to reach a settlement." Committee on the Judiciary, Report on Bill 16–418, the "Medical Malpractice Reform Act of 2006," April 28, 2006 ("Committee Report"), at 1, 2. The Council observed that "[s]ettlements, espe-

cially ones accomplished early in the litigation process, lower each party's individual costs ... and promote judicial economy by decreasing the time and money spent by the court on these complicated and contentious issues." Committee Report at 2. Given the express goals underlying the Council's adoption of the 90–day notice provision, we conclude, even in the absence of a clear articulation of the Council's intent about whether to apply the notice provision to causes of action that accrued before the Act's effective date, that the notice provision did apply to Lacek's suit.[4]

 We note, too, that when Lacek served her complaint on the Hospital on August 20, 2007, she forced the Hospital to incur the expense of either answering or filing a motion to dismiss within the 20 days that ended on September 10, 2007[5]— whereas, had a 90–day pre-filing notice period been allowed to run, at least possibly a settlement could have been achieved and litigation costs avoided. "Ultimately," the reach of a remedial statute "becomes a matter of judgment made upon review of the legislative goal." *CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 262 (2d Cir.2009) (citation and internal quotation marks omitted). The fact that Lacek's failure to comply with the statute may have impeded the legislative goal of facilitating settlement provides further support for our conclusion that Lacek was required to give the Hospital the statutorily mandated 90–day prior notice in order to maintain a suit.[6]

4. We agree with the Hospital that this is not a case of a statute "operating retroactively to bar the enforcement of pre-existing rights." *Owens–Corning Fiberglas Corp. v. Henkel*, 689 A.2d 1224, 1235 (D.C.1997) (citation and internal quotation marks omitted). The Act did nothing to curtail the right of medical malpractice plaintiffs to sue, but simply added a procedural requirement that 90–days' prior notice be given (at the outset of an extended limitations period, if necessary) before suit may be filed.

5. *See* Super. Ct. Civ. R. 12(a)(2) and (a)(4)(A).

6. The fact, emphasized by Lacek, that the Act "does not require absolute notice of all claims and even provides for the inclusion in any litigation of additional theories of recovery as well as additional injuries not included in the advance notice," *see* D.C.Code § 16–2802(b), does not undermine our conclusion. The Council could well have recognized that prior notice of intent to sue could facilitate settle-

In *Finch v. District of Columbia*, 894 A.2d 419 (D.C.2006), the case on which Lacek relies for her argument about the lack of a "grace period," we considered the applicability of a new statute that established a 90–day limitations period for bringing a disciplinary proceeding against a police officer. We concluded that a disciplinary proceeding based on conduct known to the Police Department nearly 90 days prior to the statute's effective date, and known for more than 90 days prior to commencement of the disciplinary proceeding, was not foreclosed, because the District was entitled to a " 'grace period' for adjusting to a new statute of limitations." *Id.* at 421 (citing *Block v. North Dakota*, 461 U.S. 273, 286 n. 23, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), for the proposition that "[t]he Constitution ... requires that statutes of limitations must allow a reasonable time after they take effect for the commencement of suits upon existing causes of action") (further citation omitted). Assuming without deciding that Lacek did not waive her argument about the need for a grace period (since she did not raise this argument in opposing the Hospital's motion to dismiss), we are satisfied that she had sufficient time to adjust to the requirements of the Act. To the extent that a grace period was required, Lacek had it, both because the legislature extended the period within which she could file suit by 90 days to accommodate the 90–day prior notice period,[7] *see* D.C.Code

§ 16–2803, and because the Act went into effect more than 90 days before Lacek would otherwise have been required to file suit to avoid a statute-of-limitations bar. *Cf. Finch*, 894 A.2d at 422 (concluding that a grace period of at least 90 days would be a reasonable period for adjusting to a new 90–day limitations period).

Lacek's final argument as to why the Act cannot reasonably be thought to apply to her suit is that application of the Act in her case meant that her counsel—to whom, Lacek explains, she first brought her case in April 2007, *i.e.*, "within 90 days of the expiration of the applicable statute of limitations"—was placed in a position where he "could only file suit on [the] exact ninetieth (90th) day" after giving notice. While the Council, with greater foresight, might reasonably have fashioned a more forgiving extension of the statute of limitations, we are not persuaded that the result that Lacek decries either is unreasonable or indicates in any way the Council's intent not to apply the 90–day notice requirement to causes of action that had already accrued. Even though the impact of the Act is to require some plaintiffs (including some whose causes of action accrued *after* the effective date of the Act) to file their suits, if at all, on the "exact ninetieth day" after giving notice, and even if that presents an undue hardship, the Act includes a safety net that would permit the trial court to waive the notice requirement "if the interests of justice dictate." D.C.Code § 16–2804(b).[8]

ment and avoid litigation even if a would-be plaintiff had not yet formulated every theory of recovery that might be urged upon or after the filing of a complaint.

7. Notably, even if the Act had shortened the applicable limitations period, there is no constitutional barrier that would "preclude[ ] holding [the] shortened period applicable to a claim in existence when the change was enacted, provided a reasonable time remained within which to sue." *Owens–Corning, supra* note 4, 689 A.2d at 1234 (quoting *Kalis v. Leahy*, 188 F.2d 633, 634 (D.C.Cir.1951)).

8. In opposing the Hospital's motion to dismiss, Lacek did not cite section 16–2804(b) or suggest to the court that the interests of justice required the court to waive the 90–day notice requirement. Rather, she implied that the parties had agreed to waive 90–day notice and argued that "dismissal and the inevitably prompt refiling" of the complaint so as strictly to comply with the Act would be a "waste of time." On appeal, Lacek cites section 16–2804(b) only in her reply brief, and only in a perfunctory way. Thus, we consider the "interests of justice" argument to be waived, *see*

## III.

█ Lacek also argues that the Superior Court abused its discretion in failing to find that she made a good faith effort to comply with the 90–day notice requirement. She asserts that she faced the "daunting" task of determining whether the new notice statute applied to her, that she was in the untenable position of risking a motion to dismiss on the ground that her suit was time-barred if she delayed filing suit in order to give notice, and that "it would have been shier [sic] speculation for [her] to assume that she could wait until after July 7, 2007" to file her complaint. She contends that these circumstances "mandate a finding that she acted in good faith, thus satisfying the grounds for an exception" under the Act. We agree with the Hospital, however, that section 16–2803 "unambiguously tolls" the limitations period upon service of the 90–day notice mandated by section 18–2802(a). In addition, the trial judge impliedly found that the record belied Lacek's claim that she made a good faith attempt to comply with the Act. Lacek filed her complaint on June 25, 2007. On that date she still had twelve days before she would have needed to file her complaint (and even more time if her cause of action accrued after July 7, 2004, the date of her fall) had she really been worried about whether the extension of the limitations period established by section 16–2803 applied to her. And, rather than give the Hospital notice somewhat earlier or at the same time, she delayed notice to the Hospital for four additional days, until June 29. Lacek could have withdrawn her June 25 complaint and re-filed the complaint on September 27, 2007, 90 days after the notice she gave to the Hospital. Instead, on September 24, when that option was still available, she rejected it as a waste of time. The Superior Court did not abuse its discretion in finding that Lacek had not shown "a good faith effort to give the required notice" that could "excuse [her] failure to give notice within the time prescribed." D.C.Code § 16–2802(a).

## IV.

█ Finally, Lacek argues that the facts demonstrate that the Hospital "is either estopped or waived any rights to object on the basis of inadequate notice." She states that she "believed in good faith that the notice was being accepted as the required notice and that she did not need to dismiss her action after the notice given on June 29, 2007;" that the Hospital's Motion to Dismiss came as a "surpris[e]" since the Hospital said that it was "investigating" and did not object that it had been given no notice before the filing; and that the Hospital's motion to dismiss contravened the "letter and spirit of the conversation and confirming correspondence with the defendant." She suggests that she was "lull[ed] . . . into inaction" by the Hospital's conduct.

Even assuming that the 90–day notice that the Act mandates can be waived by agreement of the parties (a proposition that is not self-evident), nowhere in the record is there evidence (and Lacek points to no evidence) of the Hospital's having clearly and unambiguously waived its right to the statutory 90–day notice. *Cf. Eagle Maint. Servs. v. District of Columbia Contract Appeals Bd.*, 893 A.2d 569, 577 (D.C. 2006) (a waiver must be clear and unam-

*Hamilton v. Howard Univ.*, 960 A.2d 308, 313 n. 5 (D.C.2008), and we perceive no manifest injustice that requires us to consider it in resolving this appeal. *Cf. Gavin v. Washington Post Employees Fed. Credit Union*, 397 A.2d 968, 973, 973 n. 9 (D.C.1979) (noting that party's failure to raise waiver and estoppel claims in the trial court "precludes their consideration on appeal unless injustice is manifest").

biguous). Quite the contrary, the Hospital's July 11, 2007 letter to Lacek made specific reference to the 90–day pre-filing notice requirement, acknowledging receipt of "what seems to be [Lacek's] 90 day notice of intent to sue." [9] Although the Hospital did not protest Lacek's having already filed her complaint, little (let alone a "clear and unambiguous" waiver) can be read into that omission, since dismissal of the June 25 complaint and refiling was a possibility. As Lacek cited to the trial court, and she has cited to us, no other specifics in support of her argument that the Hospital waived notice, the trial court did not err in rejecting Lacek's waiver-by-agreement argument. We discern no basis for either accepting the argument or for remanding the case to the trial court for a hearing on the issue (as Lacek suggests).

Nor does the record support Lacek's estoppel argument, which she raises for the first time on appeal.[10] Lacek relies by way of analogy on the rule that "[a] defendant is estopped from raising the statute of limitations as a defense if that defendant has done anything that would tend to lull the plaintiff into inaction and thereby permit the statutory limitation to run against him." *Partnership Placements v. Landmark Ins. Co.*, 722 A.2d 837, 842 (D.C.1998) (citation and internal quotation marks omitted). But this rule does not apply where a plaintiff "fail[s] to show any misleading conduct by [defendant] that occurred before [plaintiff] had already

allowed the statute of limitations to lapse." *Id.* Even if the Hospital's July 11, 2007 letter lulled Lacek into believing initially that the Hospital would not object to her failure to give the required 90–day notice, by the time the Hospital filed its motion to dismiss on September 10, 2007, Lacek knew that the Hospital *did* object. Lacek has only her own inaction to blame for the fact that she did not then dismiss and, later, re-file her complaint (which she could have done before the extended limitations period expired) so as to comply with the Act's prior-notice requirement. In her September 24, 2007 opposition to the motion to dismiss, Lacek expressly recognized that she had this option but, as the Hospital argues, appears to have "made a conscious decision to disregard the statutory notice requirement," believing that refiling would be a waste of time. On these facts, as a matter of law, estoppel will not lie.

Accordingly, the judgment of the Superior Court dismissing the complaint is

*Affirmed.*

---

9. The July 11, 2007 letter is the only evidence that Lacek cited to the trial court as evidence that the Hospital had waived the 90–day pre-filing notice.

10. Accordingly, we review this claim only for plain error. Under the test for plain error, an appellant first "must show (1) error, (2) that is plain, and (3) that affected appellant's substantial rights. Even if all three of these conditions are met, this court will not reverse

unless (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *In re D.B.*, 947 A.2d 443, 450 (D.C.2008) (citations and internal quotation marks omitted). As we go on to explain, the record that was before the trial court did not support a claim of estoppel, and *a fortiori* the trial court did not plainly err by failing *sua sponte* to apply the doctrine of estoppel to save Lacek's complaint from dismissal.