*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CV-329

BRIAN KEITH WAUGH, APPELLANT,

v.

MEDSTAR GEORGETOWN UNIVERSITY HOSPITAL, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAM-7831-17)

(Hon. Robert R. Rigsby, Trial Judge)

(Submitted January 7, 2019                    Decided March 14, 2019)

Brian Keith Waugh, *pro se*.

*Crystal S. Deese* and *Diona F. Howard-Nicolas* were on the brief for appellee.

Before THOMPSON and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

RUIZ, *Senior Judge*:  This appeal arises out of a medical malpractice action filed by *pro se* appellant Brian Keith Waugh against appellee MedStar Georgetown University Hospital (the "Hospital").  The trial court dismissed appellant's amended complaint on the alternative grounds that it was filed outside of the

statutory three-year limitations period governing medical malpractice claims, and that appellant did not provide appellee with ninety days' pre-suit notice as required by statute.  We affirm.

## I.  Factual Background

Appellant alleges that he received improper treatment at the Hospital between September 7-8, 2014, when two nurses went "fishing" for a vein in his right arm.  The first nurse's attempt to insert the intravenous needle caused appellant's arm to "bleed[] significantly from the needle hole."  And when a second nurse inserted the needle, appellant's "thumb felt funny."  A radiology technician then "took out the needle in [appellant's] right arm and put one in the back of [his] right hand without a problem," but it "caused the back of [appellant's] hand to sting intensely," and appellant "screamed out, Ahhhhhh!"  Appellant subsequently sought medical care related to the injury.  His hand sometimes "feel[s] like it is going to sleep," and he occasionally experiences "prickly pains, or sharp pains in the back of [his] wrist."

Appellant filed his complaint on November 22, 2017.[1]  After the Hospital filed a motion to dismiss the complaint, appellant filed both a brief in opposition and an amended complaint.  The Hospital filed a motion to dismiss the amended complaint, and appellant filed a motion to amend his brief in opposition to the Hospital's motion to dismiss the original complaint.  Then, appellant filed a brief in opposition to the Hospital's motion to dismiss the amended complaint.

The trial court issued an omnibus order resolving all outstanding motions on February 23, 2018.  As relevant here, the trial court:  (1) denied the Hospital's motion to dismiss the initial complaint as mooted by the amended complaint, (2) denied appellant's motion to amend his brief in opposition to that motion as also mooted by the amended complaint,[2] and (3) granted the Hospital's motion to dismiss the amended complaint on the grounds that appellant did not file his

---

[1] The complaint alleged six causes of action:  (1) discrimination by disparagement of healthcare; (2) unnecessary pain, suffering, and bodily injury; (3) negligent infliction of emotional distress; (4) intentional infliction of emotional distress; (5) loss of the sense of freedom in seeking healthcare; and (6) loss of sense of safety and wellbeing in seeking healthcare.

[2] The trial court alternatively stated that there was no opposition brief to amend.  This is not supported by the record.  Appellant did file a brief in opposition to the Hospital's first motion to dismiss, but it was improperly docketed as part of his motion for an extension of time to file an opposition brief, rather than as a separate filing.  However, we find no reversible error in the trial court's misstatement, given its alternative holding that appellant's motion to amend his opposition to the Hospital's motion to dismiss the initial complaint was moot.

complaint within the three-year limitations period established by D.C. Code § 12-301(8) (2012 Repl.), and did not provide the Hospital with ninety days' pre-suit notice as required by D.C. Code § 16-2802 (2012 Repl.). This appeal followed.

## II.    Standard of Review

The trial court may dismiss a claim for failure to comply with the applicable statute of limitations under Super. Ct. Civ. R. 12(b)(6) if "the claim is time-barred on the face of the complaint." *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1020 (D.C. 2013). "We review *de novo* the trial court's dismissal of a complaint under Super. Ct. Civ. R. 12(b)(6)." *Id.* at 1019.

## III.    Analysis

Before bringing a medical malpractice action in the District of Columbia, a plaintiff must satisfy two procedural requirements. First, the plaintiff must serve the defendant with notice of intention to file suit "not less than 90 days prior to filing the action." D.C. Code § 16-2802(a) (2012 Repl.).[3] This requirement serves

_____

[3] D.C. Code § 16-2802 provides that:

(continued . . . )

to "encourage early settlements and facilitate the parties' ability to reach a settlement," which in turn "lower[s] each party's individual costs," and "promote[s] judicial economy by decreasing the time and money spent on these complicated and contentious issues." Medical Malpractice Reform Act of 2006, D.C. Council, Report on Bill 16-418 at 1-2 (Apr. 28, 2006); *see also Lacek v. Washington Hosp. Ctr. Corp.*, 978 A.2d 1194, 1198 (D.C. 2009). In the event the parties are unable to resolve their dispute outside of the judicial process, the

_____

(. . . continued)

(a) Any person who intends to file an action in the court alleging medical malpractice against a healthcare provider shall notify the intended defendant of his or her action not less than 90 days prior to filing the action. Notice may be given by service on an intended defendant at his or her last known address registered with the appropriate licensing authority. Upon a showing of a good faith effort to give the required notice, the court may excuse the failure to give notice within the time prescribed.

(b) The notice required in subsection (a) of this section shall include sufficient information to put the defendant on notice of the legal basis for the claim and the type and extent of the loss sustained, including information regarding the injuries suffered. Nothing herein shall preclude the person giving notice from adding additional theories of liability based upon information obtained in court-conducted discovery or adding injuries or loss which become known at a later time.

(c) A legal action alleging medical malpractice shall not be commenced in the court unless the requirements of this section have been satisfied.

plaintiff must satisfy a second requirement: filing the complaint within the District of Columbia's three-year limitations period for medical malpractice actions. D.C. Code § 12-301(8) (2012 Repl.).

These two requirements interact with one another. If the pre-suit notice required by D.C. Code § 16-2802(a) "is served *within 90 days* of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the date of the service of the notice." D.C. Code § 16-2803 (2012 Repl.) (emphasis added).

This case centers on the "within 90 days" requirement to trigger the statute-of-limitations extension. Appellant concedes that the three-year limitations period applicable to his claims began to run when his alleged injuries occurred on September 7-8, 2014,[4] and that his complaint was not filed within three years of that date. However, he contends that because his complaint was filed "within 90 days" *after* the limitations period expired, it is eligible for the statute-of-limitations extension provided by D.C. Code § 16-2803, and should be deemed timely. We disagree.

---

[4] *See Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) ("Where the fact of an injury can be readily determined, a claim accrues for purpose of the statute of limitations at the time the injury actually occurs.").

## A.     Statute of Limitations

In construing the statute-of-limitations extension provided by D.C. Code § 16-2803, "we must first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (citation and alteration omitted).  As appellant notes, the phrase "within 90 days of the expiration of the applicable statute of limitations" admits of more than one meaning, as it could mean within 90 days *before* the expiration of the applicable statute of limitations period, or within 90 days *after* the expiration of the limitations period.[5]  Accordingly, because statutory interpretation is a "holistic endeavor," *Washington Gas Light Co. v. Pub. Serv. Comm'n*, 982 A.2d 691, 716 (D.C. 2009) (citation omitted), we must search beyond the text of this isolated provision to ascertain its meaning, *Gondelman v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 789 A.2d 1238, 1245 (D.C. 2002).  We are guided in this inquiry by the underlying policies and objectives of the statute as a whole,

---

[5]  *See Webster's Third New Int'l Dictionary* 2627 (1993) (defining "within" as meaning, among other things, "*before* the end or *since* the beginning of" a period of time, and providing "troops would be withdrawn . . . within two years *after* the end of the war" as an illustration of the latter usage) (emphases added).

and the interaction between the statute-of-limitations extension and related statutory provisions. *Id.*

The statutory provision that is most obviously related to the statute-of-limitations extension is the three-year statute of limitations itself. Such statutes are designed to "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence," *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1202 (D.C. 1984) (citation omitted), and are to be "strictly construed in accordance with their terms," *Atiba v. Washington Hosp. Ctr.*, 43 A.3d 940, 941 (D.C. 2012).

Appellant's construction of the statute-of-limitations extension provision would undermine these policies by reading an implicit ninety-day exception into the statute of limitations based solely on the phrase "within 90 days of the expiration of the applicable statute of limitations."[6] If appellant's view that "within 90 days of the expiration" means "within 90 days *after* the expiration" were to prevail, medical malpractice defendants could receive notice of a claim for the first time more than three years after the right to bring the lawsuit accrued, in

---

[6] *Cf.* D.C. Code § 16-2802(a) (requiring that notice of intent to file suit must be given "not less than 90 days prior to filing the action").

contravention of the policy decision the District of Columbia Council reached in enacting the three-year statute of limitations. Interpreting "within 90 days of the expiration" to mean "within 90 days *before* the expiration," by contrast, accords with the policies underlying the statute of limitations, as defendants would in all cases have notice of the claims that may be asserted against them no more than three years after the right to bring the claims arose.

Moreover, the statute-of-limitations extension serves an understandable policy objective when applied to plaintiffs who serve notice of their claims *before* the three-year limitations period expires that is absent when it is applied to plaintiffs who serve notice of their claims only *after* the limitations period expires. If the ninety-day pre-suit notice requirement were not accompanied by a corresponding extension to the limitations period, it would effectively move up the statute-of-limitations deadline by ninety days, barring plaintiffs who served notice with less than ninety days remaining in the limitations period from bringing an action. The statute-of-limitations extension ameliorates this concern for plaintiffs who serve pre-suit notice within 90 days *before* the limitations period expires by extending that deadline by "90 days from the date of the service of the notice." D.C. Code § 16-2803. It serves no similar purpose for plaintiffs who serve pre-suit

notice for the first time only *after* the limitations period has already expired, as they face no possible hardship from an impending statute-of-limitations deadline.

Therefore, we conclude that, to be eligible for the ninety-day statute-of-limitations extension set forth in D.C. Code § 16-2803, a plaintiff must serve pre-suit notice within ninety days *before* the limitations period expires. As explained in the following section, there is no evidence that appellant did so here. As a result, appellant was required to file his action no more than three years after "the time the right to maintain the action accrue[d]," D.C. Code § 12-301(8), with no extension. Because it is clear from the face of appellant's amended complaint that he did not do so, we find no error in the trial court's conclusion that appellant's claims were barred by the statute of limitations.

## B. Pre-Suit Notice

Providing ninety-days' pre-suit notice is a condition precedent to filing a medical malpractice action. *See* D.C. Code § 16-2802(c) ("A legal action alleging medical malpractice shall not be commenced in the court unless the requirements of this section have been satisfied."). Appellant argues that he satisfied this requirement for two reasons.

First, appellant contends that the filing of the complaint itself serves as the notice required by D.C. Code § 16-2802(a). We see no merit in this argument. Deeming the filing of a complaint to be sufficient would be inconsistent with the text of the *pre-suit* notice requirement, D.C. Code § 16-2802(a) (requiring that notice must be served "not less than 90 days *prior to* filing the action") (emphasis added), and would subvert its purpose, *see Lacek*, 978 A.2d at 1198 (explaining that the filing of a complaint "force[s] the Hospital to incur the expense of either answering or filing a motion to dismiss," whereas the pre-suit notice period allows for the possibility that "a settlement could [be] achieved and litigation costs avoided"). We have deemed the filing of a complaint to be insufficient to satisfy a similar pre-suit notice requirement, *see Campbell v. District of Columbia*, 568 A.2d 1076, 1078 (D.C. 1990) (rejecting "appellants' argument that the statutory purpose of [D.C. Code] § 12-309 can be served just as well by a complaint that is filed within the six-month period for giving notice"),[7] and see no reason a different

---

[7] D.C. Code § 12-309(a) provides that, with limited exceptions:

> [A]n action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia

(continued . . . )

result should obtain here. We thus reject appellant's first argument that the pre-suit notice requirement was satisfied.

Second, appellant contends that he satisfied the notice requirement because "the acts in the Amended Complaint were filed by fax with the D.C. Department of Health in October 2014." If appellant had provided pre-suit notice in October 2014, it would have been more than ninety days before the September 2017 expiration of the limitations period, and timely under D.C. Code § 16-2802(a). But appellant's allegation that he sent a fax to the D.C. Department of Health outlining the facts underlying his complaint is wholly insufficient to establish that he served "the intended defendant" (i.e., the Hospital in this case) with pre-suit notice at its "last known address registered with the appropriate licensing authority." D.C. Code § 16-2802(a). Similarly, appellant's claim that he was unable to ascertain the identities of the nurses or radiology technician who allegedly provided the improper care provides no basis to excuse his failure to notify *the Hospital* within ninety days before filing suit. Therefore, we reject appellant's second argument that the pre-suit notice argument was satisfied as well.

_____
(. . . continued)
        of the approximate time, place, cause, and circumstances
        of the injury or damage.

**IV.**

For the foregoing reasons, appellant did not file his complaint within the applicable limitations period and failed to provide the Hospital with the required pre-suit notice.   Accordingly, the trial court's order dismissing appellant's amended complaint is

*Affirmed.*